UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VERSAI MANAGEMENT CORPORATION,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **No. 11-290 c/w**<br>**11-2139, 11-2140**<br>**(REF: 11-2139, 11-2140)** |
| **LANDMARK AMERICAN INSURANCE CORPORATION**<br>    **Defendant** | **SECTION "E"** |

### ORDER AND REASONS

Before the Court is the Motion *in Limine* to Exclude and/or Limit the Expert Testimony of Louis M. Fey, Jr. ("Fey") filed by Defendant, Landmark American Insurance Corporation ("Defendant").[1] Plaintiff opposes Defendant's motion.[2] For the following reasons, the motion is **GRANTED IN PART** as set forth below.

### *Background*

The Versailles Arms Apartments is a 50-unit, low-income housing apartment complex (the "Complex") located in the New Orleans East area of New Orleans, Louisiana.[3] The Complex sustained heavy damage during Hurricane Katrina. Plaintiff obtained an all-risk commercial property insurance policy covering the Complex from Defendant for the

---

[1] R. Doc. 89.

[2] R. Doc. 97.

[3] R. Doc. 88 at pp. 10-11.

1

years 2008-2009.[4] The following year, Defendant issued to Plaintiff another all-risk commercial property insurance policy, number LHD364713 (the "Policy"), with an effective period from October 31, 2009, to October 31, 2010.[5] The Policy provides coverage for losses resulting from fire.[6]

On July 26, 2010, fire damaged buildings 27 and 51 of the Complex.[7] On September 3, 2010, a second fire destroyed building 40.[8] On September 23, 2010, a third fire damaged building 25.[9] Thereafter, Plaintiff instituted three separate lawsuits against Defendant – one addressing each fire[10] – in the Civil District Court for the Parish of Orleans, State of Louisiana.[11] Plaintiff alleges that Defendant failed to timely adjust its claims for losses stemming from the fires and failed to tender to Plaintiff the amount of the buildings' value as set forth in the Policy. Defendant removed the cases to the U.S. District Court for the Eastern District of Louisiana, where they were consolidated as the above-captioned

---

[4] R. Doc. 88 at p. 11.

[5] R. Doc. 88 at p. 11.

[6] R. Doc. 88 at p. 10.

[7] R. Doc. 88 at p. 11.

[8] R. Doc. 88 at p. 11.

[9] R. Doc. 88 at p. 11.

[10] Civil Action Nos. 11-290 (July 26, 2010 fire), 11-2139 (September 23, 2010 fire), and 11-2140 (September 3, 2010 fire). Unless otherwise noted, all references to the record in this order refer to the master consolidated docket in Civil Action No. 11-290.

[11] On November 26, 2012, Defendant filed a Revised Offer of Judgment regarding the July 26, 2010 fire pursuant to Rule 68 of the Federal Rules of Civil Procedure. *See* R. Doc. 68. Plaintiff accepted the offer on December 9, 2012. *See* R. Doc. 78. The Court entered judgment in favor of Plaintiff and against Defendant on December 11, 2012, in Civil Action No. 11-290. *See* R. Doc. 79. As a result, Plaintiff's triable claims remain only in Civil Action Nos. 11-2139 and 11-2140.

matter.[12] Jurisdiction is predicated on diversity.

Plaintiff's petitions allege that it is owed the full value of buildings 25 and 40 as stated in the Policy and provided for under the Louisiana Valued Property Law ("VPL," La. Rev. Stat. § 1318), as well as penalties, attorney's fees and costs pursuant to La. Rev. Stat. §§ 22:1892 and 22:1973.[13]  Defendant has counterclaimed, alleging that, pursuant to a protective safeguards endorsement (the "Endorsement"), the Policy requires Plaintiff to ensure that the Complex is "fenced with security" and that the Complex contains no aluminum electrical wiring.[14]  Defendant maintains Plaintiff failed to comply and, despite having knowledge that it was not in compliance with the Endorsement, submitted fraudulent proofs of loss to Defendant.  As a result, Defendant contends it is entitled to damages pursuant to La. Rev. Stat. § 22:1924, La. Civ. Code art. 2299, and La. Civ. Code art. 2303.  Defendant also seeks costs, attorney's fees, and interest for the expenses it incurred to investigate and defend against Plaintiff's claims.[15]

Fey is Plaintiff's expert witness.  Defendant submits that Fey has prepared two expert reports in which he discusses and reaches three legal conclusions: (1) the VPL applies to the Policy; (2) the Endorsement is ambiguous; and (3) Defendant acted in "bad faith" in adjusting Plaintiff's losses in violation of La. Rev. Stat. §§ 22:1973 and 22:1982.  As a result, Defendant requests the Court to enter an order "prohibiting Mr. Fey from offering

---

[12] R. Doc. 38.

[13] Civil Action No. 11-2139, R. Doc. 1-1; Civil Action No. 11-2140, R. Doc. 1-1.

[14] R. Docs. 57 and 58.

[15] R. Docs. 57 and 58.

3

testimony regarding these three legal conclusions at trial."[16]

### *Law and Analysis*

The Federal Rules of Evidence permit an expert witness with "scientific, technical or other specialized knowledge" to testify if such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue," so long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Courts, as "gatekeepers," are tasked with making a preliminary assessment whether expert testimony is both reliable and relevant. *See Pipiton v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993)). A witness's proponent must prove by a preponderance of the evidence that the expert's testimony satisfies Rule 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).

While an expert witness is permitted to give his opinions on an "ultimate issue" of fact, assuming he is qualified to do so, he is not permitted to make credibility determinations or offer conclusions of law. Fed. R. Evid. 704; *see also Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law . . . nor, may an expert go beyond the scope of his expertise in giving his opinion."); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("Fed. R. Evid. 704 abolished the per se rule against testimony regarding ultimate issues of fact. . . . Rule 704, however, does

---

[16] R. Doc. 89-1 at p. 1. Defendant also requests the Court to "strik[e] the related portions of Mr. Fey's reports from evidence." R. Doc. 89-1 at p. 1. The Court observes that an expert report is considered hearsay and thus is inadmissible at trial. *Marquette Transp. Co., Inc. v. Eagle Subaru*, 2010 WL 1558921, at *3 (E.D. La. Apr. 15, 2010) (Vance, J.). The Court need not "strik[e] the related portions of Mr. Fey's reports from evidence" because, as Fey will be present to testify, the reports are inadmissible.

4

not open the door to all opinions."). As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

## I. The VPL

First, Defendant argues Fey's opinion that the VPL applies to the policy is a legal conclusion, and therefore, is inadmissible.[17] Plaintiff responds that Fey is "allowed to testify based on his specialized knowledge of valued policies versus other types of insurance policies used in the insurance industry, including but not limited to how premiums are calculated for valued policies, and to discuss property schedules that accompany such policies, in order to help the trier of fact understand the evidence and to determine any facts in issue in that regard."[18]

Whether the Policy is a valued policy within the meaning of the VPL is a question of law for the Court, not a question of fact for the jury. *Landry v. La. Citizens Prop. Ins. Co.*, 983 So.2d 66, 73 (La. 2008). The parties have filed motions for summary judgment regarding whether or not the VPL is applicable in this matter.[19] The Court will enter, by separate order, written reasons with respect to this legal issue. Fey will not be permitted to testify that, in his opinion, the Policy is a valued policy within the meaning of the VPL. Thus, with respect to the VPL, Defendant's motion *in limine* is **GRANTED**.

---

[17] R. Doc. 89-1 at p. 2.

[18] R. Doc. 97 at p. 3.

[19] *See* R. Docs. 63, 84, and 92.

## II.  The Endorsement

Second, Defendant argues Fey's opinion that the Endorsement is ambiguous is a legal conclusion and, therefore, is inadmissible.[20]  Whether a contract term is ambiguous is a question of law for the Court.  *Johnson v. Orleans Parish School Bd.* 80 So.3d 1175, 1183 (La. App. 4 Cir. 2011) ("[T]he determination of whether a contract is clear or ambiguous is a question of law.").  Fey will not be permitted to testify that the Endorsement is ambiguous, because such testimony is a legal conclusion.  Defendant's motion *in limine* with respect to Fey's testimony that the Endorsement is ambiguous is **GRANTED**.  However, Fey will be permitted to testify about (1) generally accepted practices regarding protective safeguards endorsements in the insurance industry and (2) whether, in Fey's opinion, the facts on which Plaintiff relies to demonstrate compliance satisfy the Endorsement's requirements under generally accepted practices in the insurance industry.

## III.  Bad Faith

Third, Defendant argues Fey's opinion that Defendant's conduct rises to the level of bad faith is a legal conclusion that must be excluded.[21]  Fey will not be permitted to testify regarding whether Defendant's conduct rises to the level of bad faith, whether Defendant acted in accordance with its duty of good faith and fair dealing, or whether Defendant's conduct was intentional, arbitrary and capricious, or malicious, because such opinions are legal conclusions.  *Huey v. SuperFresh/Sav-A-Center, Inc.*, 2009 WL 604914, at *2 (E.D. La. Mar. 9, 2009) (Africk, J.).  Defendant's motion *in limine* with respect to Fey's legal conclusions regarding bad faith is **GRANTED**.  Nevertheless, this case involves facts that

---

[20] R. Doc. 89-1 at p. 3.

[21] R. Doc. 89-1 at p. 3.

are far more complicated than a typical homeowner's insurance dispute. The property, which suffered significant damage during Hurricane Katrina and has been vacant since that time, was insured under an all-risk commercial property insurance policy written specifically with knowledge of its blighted state. Plaintiff demands payment for two discrete fires separated by a three-week period. Consequently, the Court concludes that expert testimony regarding insurance industry standards for claims adjustment will be helpful to the jury. *See 200 South Broad Street, Inc. v. Allstate Ins. Co.*, 2009 WL 2028349, at *2 (E.D. La. July 9, 2009) (Berrigan, J.); *Huey*, 2009 WL 604914, at *2. Fey may testify about insurance industry standards, though he may not, as the Court has discussed above, render ultimate legal conclusions that Defendant acted in bad faith.

**IT IS SO ORDERED**.

New Orleans, Louisiana, this  22nd  day of February, 2013.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**